ADOLPH A. ALTIG et al., Appellants, v. PERRY D. ALTIG et al., Appellees.

**Expert evidence:** MENTAL AND PHYSICAL CONDITION. In a contest between heirs an attending physician's testimony as to the physical and mental condition of a common ancestor is admissible.

**Appeal:** ASSIGNMENT OF ERROR. Where objection to testimony is only urged upon appeal in a general way, and the specific rulings objected to as erroneous are not pointed out, the same will not be considered.

Conveyances: MENTAL UNSOUNDNESS: BURDEN OF PROOF: EVIDENCE.
3  Mere weakness of mind, unaccompanied by fraud or undue
   influence, is not sufficient to set aside a conveyance, where the
   mental power of the grantor has not been so far impaired as
   to render him incapable of comprehending the nature of the
   instrument executed; and on this question the plaintiffs have
   the burden.  Evidence, held, insufficient to show mental in-
   capacity.

Same.  An uncleanly physical condition, which is the necessary re-
4  sult of disease, is not an evidence of unsoundness of mind.

*Appeal from Poweshiek District Court.*— HON. JOHN T.
SCOTT, Judge.

MONDAY, FEBRUARY 17. 1908.

ACTION by plaintiffs, who are heirs of Henry C. Altig, deceased, to set aside a conveyance of a forty-acre tract of land made during his lifetime to his son, who is the defendant in the action; the grounds alleged as entitling the plaintiff to the relief demanded being that the deceased was at the time the conveyance was executed of unsound mind, and that the same was procured by fraud and undue influence.  After a trial on the merits, plaintiffs were denied relief, and they appeal.—*Affirmed.*

*Boyd & Bray,* for appellants.

*Will C. Rayburn,* for appellees.

MCCLAIN, J.—The forty-acre farm in Poweshiek county, title to which is involved in this suit, was the residence of Henry C. Altig, a widower, from 1888 to 1899, having been owned by him for a long time prior to the time of such residence, and only temporarily abandoned as a residence for a few years prior to 1888.  In the spring of 1899 said Altig went to live in Grinnell with Mrs. Howard, a daughter, who is one of the plaintiffs; but in the fall of that year he returned

to the home farm, and lived there alone until the next spring, when he went to live with the defendant, a son who resided on a farm distant about a mile and three-quarters. The defendant had added a room to his house for his father's accommodation, and here the father continued to live until his death in June, 1903. On October 17, 1902, Henry C. Altig executed a warranty deed to defendant, purporting to convey title to the forty-acre farm in consideration of " one dollar in hand paid and of board, lodging, and loving care, heretofore rendered to me and hereafter to be rendered to me during the time of my natural life by Perry D. Altig." It is this deed which plaintiffs ask to have set aside.

In some instances when objections were made for defendant to questions propounded to witnesses by counsel for plaintiffs, the trial court, sustaining the objections, refused to allow the answers to be taken subject to the objection, as is usual in the trial of equity cases, and errors in such rulings are now relied upon, and it is insisted that there must be a reversal because of these alleged errors. As these objections to the court's rulings are argued collectively, we may properly dispose of them in the same manner by simply saying that no prejudicial error is made to appear. In some instances the answers were taken subject to objection and are shown by the record. In all others it is plainly to be seen what answer was expected, and in considering the evidence we have given the appellants the advantage of all the evidence offered in their favor so far as it appears, and of the answers which would have been most favorable to them where witnesses were not allowed to answer. This we have done for convenient disposition of the case on its merits, although, so far as we can see, there were no errors of law in the court's rulings in this respect.

1. EXPERT EVI-
DENCE: mental
and physical
condition.

Objections to the testimony of the attending physician of grantor were not well taken. In a contest between heirs, a physician's testimony as to the physical and mental condition of the com-

mon ancester is admissible. *Winters v. Winters,* 102 Iowa, 53.

Objections to the testimony of defendant with reference to personal conversations and transactions with his father are urged in a general way; but, as the specific rulings relied upon as erroneous are not pointed out, we need not give the matter further consideration.

**2. APPEAL:** assignment of error.

The acknowledgment to the deed in question is said to be faulty, but as appellants alleged the execution of the deed and set out a copy, and defendant admitted such execution, the acknowledgment could not have been material.

Coming, then, to the merits. of the case, we find no evidence whatever tending to show that the conveyance was procured by fraud or undue influence. The deed was drawn by an attorney at the direction of defendant, but the father had expressed his desire that the land go to his son, and had made a will in February, 1899, before he commenced to reside with his son, in which this land with another tract of thirty-five acres was devised to the same son, subject to the payment of legacies to other heirs in the aggregate sum of $750; so that the disposition made of this land was one which the father had intended before defendant had any opportunity, so far as appears, to influence his action. There is no evidence that the father was in any way imposed upon or taken advantage of by reason of weakening of his mental faculties by age or disease. The sole question, then, is whether Henry C. Altig was of sound mind when the conveyance was made. On this question the testimony is in conflict, and, if the case had been tried to a jury, we could have said that a verdict for either side was sufficiently supported by evidence to justify our refusal to interfere. The burden of proof is on the plaintiffs to establish mental unsoundness. Mere weakness of mind, not taken advantage of through fraud or by the exercise of undue influence, is not enough to require the setting aside of a conveyance where the mental power of the grantor has not

**3. CONVEYANCES:** mental unsoundness: burden of proof: evidence.

so far deteriorated or been destroyed as that he has become incapable of understanding the nature and consequences of the instrument he executes. *Nowlen v. Nowlen,* 122 Iowa, 541; *Paulus v. Reed,* 121 Iowa, 224. We find practically no evidence of incapacity to understand the nature of the property of the grantor and the relative claims of those who would have otherwise been entitled to share in it had no conveyance been made. The provision that the property granted was in consideration of support already rendered, and to be rendered so long as grantor might live, was not improvident so far as is made to appear. There is some evidence tending to show unsoundness of judgment with reference to trivial affairs. But the incidents are not connected, and neither the facts themselves relied upon, nor the conclusions sought to be drawn, are so well established or so persuasive as to make out general mental unsoundness.

There is evidence tending to show a filthy personal condition on the part of the grantor from a time prior to the execution of the deed up to his death, and carelessness with reference to attire, which appellants rely upon to bring the case within the analogy of *Osborne v. Osborne,* 125 Iowa, 296; but here it is shown that during the period referred to the grantor was afflicted in such a way that personal cleanliness was not always practicable. Surely an uncleanly condition of the person which is the necessary result of disease is not evidence of unsound mind.

4. SAME.

Gathering many incidents referred to by various witnesses together, the counsel for appellants got from experts answers to hypothetical questions to the effect that in their opinion grantor was of unsound mind; but these experts on cross-examination all admitted that what they meant was that the facts recited tended to show weakness of mind or loss of mental power, rather than unsoundness of mind. The physician who attended the grantor from a time preceding the making of the deed to his death, and who spoke, there-

fore, from personal observation, testified that his mind was normally clear and strong for a man of seventy-seven years, which was the grantor's age at the time of his death.

On the whole case, we are satisfied that appellants did not make out a case for setting aside the conveyance; and the decree of the lower court is *affirmed.*